UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Raphael Mendez,

                Plaintiff,

v.

Mary Haugen, Unit Manager; and
All Unknown other at Federal Medical
Center (FMC) Rochester Minnesota 55903,

                Defendants.

Civ. No. 14-4792 (ADM/BRT)

**REPORT AND RECOMMENDATION**

---

Raphael Mendez, FMC Rochester, Unit 1/2, Rochester, MN 55903, *pro se* Plaintiff.

Ana H. Voss, Esq., United States Attorney's Office, counsel for Defendant Haugen.

---

BECKY R. THORSON, United States Magistrate Judge.

    Raphael Mendez, a civil detainee housed in Unit 1/2 of the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"), has filed a civil suit against Unit Manager Mary Haugen and other unnamed FMC Rochester personnel, alleging that his Thirteenth Amendment right to be free from involuntary servitude was violated when he was required, under threat of administrative segregation, to clean restrooms lining a central corridor in his housing unit. (Doc. No. 8, Am. Compl. & Attach. 1 at 3–4, 7–8.) Defendant Haugen has moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that she is entitled to qualified immunity on Mendez's Thirteenth Amendment claim. (Doc. No. 15, Def.'s Mot. to Dismiss; Doc. No. 16, Def.'s Mem. in Supp. of Mot. to Dismiss 1, 5–18.) For the reasons stated below, this Court agrees that

Haugen is entitled to qualified immunity and therefore recommends that her motion to dismiss be granted.

## BACKGROUND

After being indicted in the U.S. Virgin Islands for assault with a deadly weapon and related offenses, Raphael Mendez was found incompetent to stand trial and civilly committed under 18 U.S.C. § 4246(d), which applies to those "suffering from a mental disease or defect" who present "a substantial risk of bodily injury to another person or serious damage to property of another." *See In re Mendez*, 220 F. App'x 75, 76 (3d Cir. 2007). Mendez is currently detained in Unit 1/2 of FMC Rochester. (*See* Am. Compl.) Mendez has brought suit against Unit Manager Mary Haugen and other unidentified FMC Rochester personnel, alleging that his Thirteenth Amendment rights were violated when he was forced, under threat of administrative segregation, to clean restrooms lining a general-use hallway in his housing unit.[1] (Am. Compl. 2 & Attach. 1 at 3–4, 7–8.) Capitulating to the alleged threat, Mendez worked as a restroom cleaner on weekday evenings for fifteen dollars per month. (Am. Compl., Attach. 1 at 4.)

Relying on the Eighth Circuit's decision in *Martinez v. Turner*, 977 F.2d 421 (8th Cir. 1992), Mendez maintains that, as one who has not been duly convicted of a crime, he cannot be forced to perform any work outside his own cell or immediate living quarters without running afoul of the Thirteenth Amendment. (Am. Compl. 2–3 & Attach. 1 at 3,

---

[1] A hand-drawn diagram attached to the amended complaint indicates that the restrooms in question are located in Mendez's housing unit along a main hallway that connects inmate cells to various common areas. (*See* Am. Compl., Attach. 1 at 7–8.)

6; *see also* Doc. No. 20, Pl.'s Obj. 1; Doc. No. 21, Pl.'s Mem. 3.) He seeks millions of dollars in damages. (Am. Compl. 3.)

## DISCUSSION

Defendant Haugen has moved to dismiss Mendez's Thirteenth Amendment claim pursuant to Fed. R. Civ. P. 12(b)(6) based on qualified immunity.[2] (Def.'s Mot. to Dismiss; Def.'s Mem. 1, 5–18.) Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defense of qualified immunity is raised in a Rule 12(b)(6) motion, a court must consider two questions — (1) whether the plaintiff has stated a plausible claim that the government official violated a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged misconduct.

---

[2] In addition to her qualified immunity defense, Haugen also asserts that Mendez has failed to state a plausible claim against her because his amended complaint "is devoid of any specificity regarding actions taken by [her]," and that *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), does not otherwise provide a damages claim against federal officials for violations of the Thirteenth Amendment. (Def.'s Mem. 5–7; Def.'s Reply 1.) This Court disagrees with her first assertion, as Mendez's amended complaint sufficiently alleges that Haugen threatened to place him in administrative segregation if he refused to work as a restroom cleaner in his housing unit. (Am. Compl. 2.) As to the second assertion, this Court will assume that *Bivens* provides a cause of action under the Thirteenth Amendment because that assumption has no impact on the conclusion that Mendez's claim should be dismissed. *See Channer v. Hall*, 112 F.3d 214, 217 (5th Cir. 1997) (assuming *arguendo* "that the Thirteenth Amendment directly gives rise to a cause of action for damages under the analysis articulated in *Bivens*" before holding that the plaintiff's Thirteenth Amendment rights had not been violated).

*See Wood v. Moss*, — U.S. —, 134 S. Ct. 2056, 2066–67 (2014); *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

A right is clearly established if its "contours were sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that [she] was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. of S.F., Cal. v. Sheehan*, — U.S. —, 135 S. Ct. 1765, 1774 (2015) (quotations, citations, and alterations omitted). The dispositive question is "whether it would have been clear to a reasonable officer in the [defendant's] position that their conduct was unlawful in the situation they confronted." *Wood*, 134 S. Ct. at 2067 (quotation and brackets omitted). In other words, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1866 (2014) (quotations and alterations omitted). This exacting standard "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. —, 131 S. Ct. 2074, 2085 (2011) (quotation omitted).

Mendez claims that his Thirteenth Amendment rights were violated when he was forced, under threat of administrative segregation, to clean communal restrooms in his housing unit at FMC Rochester. The Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject

to their jurisdiction." U.S. Const. amend. XIII, § 1. Involuntary servitude "means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

Though civilly committed under 18 U.S.C. § 4246, Mendez is not being detained pursuant to a criminal conviction and, thus, he is not outside the ambit of the constitutional ban on involuntary servitude.[3] *See id.* at 943 ("By its terms the Amendment excludes involuntary servitude imposed as *legal punishment for a crime*.") (emphasis added); *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) ("McGarry was not 'duly convicted' [of a crime] and therefore does not fall within the category of persons to whom the Amendment, on its face, does not apply.") (citation omitted); *Channer*, 112

---

[3] Haugen suggests that Mendez may lie outside the protections of the Thirteenth Amendment because Bureau of Prisons' regulations provide that inmates civilly committed under § 4246 are treated as convicted inmates, rather than pretrial detainees, for various purposes. (*See* Def.'s Mem. 3–4, 16–17); 28 C.F.R. § 551.101(a)(2) ("An inmate committed under [18 U.S.C. §§] 4241(b) and (d), 4242(a), or 4243(b) is considered to be a pretrial inmate, whereas commitments under [§§] 4243(e), 4244, 4245, or 4246 are treated as convicted inmates."). Without questioning their overall validity, those administrative regulations cannot alter the meaning and import of the Thirteenth Amendment which, by its plain terms, only excludes those "duly convicted" of a "crime" from the prohibition against involuntary servitude. Indeed, courts have consistently treated individuals committed to psychiatric or other medical facilities as falling within the protections of the Amendment. *See Jobson v. Henne*, 355 F.2d 129, 130–32 (2d Cir. 1966); *Loving v. Kelly*, No. 11-355, 2011 WL 4344109, at *1–2 (M.D. La. July 27, 2011), *report and recommendation approved by* 2011 WL 4344156 (M.D. La. Sept. 14, 2011); *Parks v. Ciccone*, 281 F. Supp. 805, 811 (W.D. Mo. 1968); *Tyler v. Harris*, 226 F. Supp. 852, 853–54 (W.D. Mo. 1964); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 410–11 (Ind. 1991). While those cases may not have involved commitments under § 4246 or its current incarnation, that is a distinction without a difference in this context given the plain language of the Thirteenth Amendment.

F.3d at 217 n.4 ("The Amendment's exception, which permits involuntary servitude as punishment for a crime for which the party has been duly convicted, would be inapplicable after Channer completed his criminal sentence and became an INS detainee."). Nevertheless, because the purpose of the constitutional ban on involuntary slavery was to outlaw "those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results," the Supreme Court has held that "not all situations in which labor is compelled by physical coercion or force of law violate the Thirteenth Amendment." *Kozminski*, 487 U.S. at 942–43 (quotation omitted). The Court has recognized, for example, "that the prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties" such as jury service, military service, or road work. *Id.* at 943–44; *see also Hurtado v. United States*, 410 U.S. 578, 589 & n.11 (1973) (jury service); *Selective Draft Law Cases*, 245 U.S. 366, 390 (1918) (military service); *Butler v. Perry*, 240 U.S. 328 (1916) (upholding the constitutionality of a state law requiring all able-bodied adult male citizens to work on roads and bridges).

In a similar vein, courts have held that compelling pretrial and civil detainees to perform general housekeeping duties, both in their own cells and in common areas of their housing units, does not violate the Thirteenth Amendment, at least where those tasks are not required to be performed under inordinately harsh conditions. *See Martinez*, 977 F.2d at 423 (explaining that pretrial detainees may be compelled, under threat of administrative segregation, "to perform general housekeeping chores"); *Channer*, 112

6

F.3d at 219 ("[T]he federal government is entitled to require a communal contribution by an INS detainee in the form of housekeeping tasks . . . .") *Hause v. Vaught*, 993 F.2d 1079, 1081, 1085 (4th Cir. 1993) (holding that pretrial detainees may be required to "assist in cleaning the common areas of their cell-block"); *Bijeol v. Nelson*, 579 F.2d 423, 424–25 (7th Cir. 1978) (holding that a pretrial detainee may be compelled to perform "general housekeeping responsibilities" in his own cell and community areas); *Jobson*, 355 F.2d at 131–32 (explaining that committed mental patients may be required to perform "chores of a normal housekeeping type and kind," provided that they are not "so ruthless in the amount of work demanded, and in the conditions under which the work must be performed, . . . that a court justifiably could conclude that the inmate had been subjected to involuntary servitude"); *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *10 (E.D. Mich. July 23, 2013) ("[R]equiring a pretrial detainee to help clean his living unit, including common areas, does not amount to involuntary servitude as prohibited by the Thirteenth Amendment.").

General housekeeping chores have been deemed to include fixing and distributing meals, scrubbing dishes, laundering the sheets and clothing of other inmates, cleaning communal bathrooms and shower stalls, removing trash from common areas, and sweeping, mopping, and vacuuming general-use hallways and rooms. *See Magoon v. Tex. Dep't of Criminal Justice*, Nos. 99-40897 & 99-41060, 2001 WL 43533, at *2 (5th Cir. Jan. 5, 2001) ("shower squad and laundry"); *Channer*, 112 F.3d at 219 (kitchen service); *Hause*, 993 F.2d at 1081, 1085 (cleaning common areas of a cell-block); *Bijeol*, 579 F.2d at 424–25 (dusting, vacuuming, and emptying ashtrays in common areas); *Jackson*, 2013

7

WL 3810301, at *10 (cleaning communal toilets that had overflowed); *Loving*, 2011 WL 4344109, at *1–2 (sweeping and mopping hallways and a patient day room, disinfecting a patient bathroom and shower stall, and removing trash from the ward); *Ford v. Nassau Cnty. Exec.*, 41 F. Supp. 2d 392, 394–95, 397 (E.D.N.Y. 1999) (pushing a food cart, distributing trays of food, mopping, and sweeping); *Bayh*, 573 N.E.2d at 411–12 (fixing meals, scrubbing dishes, cutting grass, washing sheets and clothing, and cleaning floors). Consistent with that precedent, Bureau of Prisons' regulations provide that "[a] pretrial inmate may not be required to work in any assignment or area other than housekeeping tasks in the inmate's own cell and in the community living area, unless the pretrial inmate has signed a waiver of his or her right not to work." [4] 28 C.F.R. § 545.23(b) (2015).

Here, Mendez has not stated a plausible claim that Haugen (or any other official at FMC Rochester) violated his Thirteenth Amendment right to be free from involuntary servitude. Cleaning communal or general-use bathrooms in an inmate's housing unit are the type of normal housekeeping duties that fall outside the Thirteenth Amendment, and Mendez has not alleged any facts suggesting that he has been forced to perform those duties under especially harsh conditions. His contention that pretrial and civil detainees may not be required to perform any type of work outside their own cells or immediate living quarters is not supported by existing precedent. *See, e.g.*, *Channer*, 112 F.3d at 219 (requiring an immigration detainee to perform kitchen service does not violate the

---

[4] Haugen initially argued that there was no constitutional violation because Mendez had volunteered to do the work about which he now complains. (Def.'s Mem. 11–12.) Haugen has since withdrawn that argument, conceding that Mendez had not voluntarily agreed to work as a restroom cleaner in his housing unit. (Def.'s Reply 1–2.)

8

Thirteenth Amendment); *Hause*, 993 F.2d at 1081, 1085 (holding that pretrial detainees can be required to help clean the common areas of their cell-block); *Bijeol*, 579 F.2d at 424–25 (explaining that a pretrial detainee "may constitutionally be compelled to perform simply housekeeping tasks in his or her own cell and community areas"). The Eighth Circuit's decision in *Martinez*, which Mendez relies on, is no exception.

In *Martinez*, a pretrial detainee alleged that his due process rights were violated when he was placed in administrative segregation for refusing to work. *Martinez*, 977 F.2d at 422–23. The district court dismissed his complaint, prior to service of process, as frivolous. *Id.* at 423. The Eighth Circuit reversed and remanded, holding that the detainee's claim should not have been summarily dismissed as frivolous because it "was not indisputably meritless" and "[t]he district court could not, on the basis of the record before it, determine what, if any, work was being asked of Martinez." *Id.* In so holding, the Eighth Circuit noted, on the one hand, that "[r]equiring a pretrial detainee to work or be placed in administrative segregation is punishment," but that "[r]equiring a pretrial detainee to perform general housekeeping chores, on the other hand, is not." *Id.* In support of that latter proposition, the court cited the Seventh Circuit's decision in *Bijeol*, which held that pretrial detainees may be compelled to perform general housekeeping duties in both their cells and common areas. *Id.*; *see Bijeol*, 579 F.2d at 424–25, 424 n.1.

Although the court cited a portion of 28 C.F.R. § 545.23(b) (1991)—"a pretrial detainee may not be required to work in any assignment or area other than housekeeping tasks in the detainee's own cell"—in finding that Martinez might have a liberty interest protected by the Due Process Clause, it did not hold (or even purport to hold) that pretrial

9

detainees may not be constitutionally compelled to perform general housekeeping tasks outside their own cells; indeed, its statements and citation to *Bijeol* suggest otherwise. *See Martinez*, 977 F.2d at 423. The holding of *Martinez* was nothing more (and nothing less) than that the district court erred in summarily dismissing the pretrial detainee's due process claim as frivolous. *See id.* ("[Martinez's] claim was not indisputably meritless, and should not have been dismissed as frivolous."); *see also Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1031 (11th Cir. 2003) ("[T]he holdings of a prior decision can reach only as far as the facts and circumstances presented to the court in the case which produced that decision.") (quotation and citation omitted). Moreover, the Eighth Circuit only referenced a segment of § 545.23(b), which at all material times has stated that a pretrial detainee may be required to perform housekeeping tasks in his "own cell *and in the community living area*."[5] *Compare* 28 C.F.R. § 545.23(b) (1991), *with* 28 C.F.R. § 545.23(b) (2015) (emphasis added). Contrary to Mendez's view, *Martinez* does not stand for the proposition that pretrial and civil detainees cannot be required to perform general housekeeping tasks outside their own cells, such as cleaning communal or generally accessible restrooms in their housing unit.

---

[5] To the extent that Mendez is claiming a violation of 28 C.F.R. § 545.23(b) because the restrooms in question allegedly do not fall within "the community living area," a violation of prison regulations does not necessarily amount to a constitutional violation. *See Walton v. Dawson*, 752 F.3d 1109, 1122 (8th Cir. 2014) ("[V]iolating an internal [prison] policy does not *ipso facto* violate the Constitution . . . ."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations."). And for the reasons explained, Mendez's work assignment does not contravene the Thirteenth Amendment's ban on involuntary servitude, regardless of whether or not it violates § 545.23(b).

10

As Mendez has not pleaded a plausible claim for a violation of his Thirteenth Amendment rights, Haugen's motion to dismiss should be granted. But even if Mendez had stated a viable Thirteenth Amendment claim, Haugen would still be entitled to qualified immunity because it would not have been clear to a reasonable official in her position that requiring Mendez to clean the restrooms in his housing unit violated the constitutional ban on involuntary servitude. As previously noted, existing precedent has held that pretrial and civil detainees may be required to perform a wide variety of housekeeping chores in and around their housing units, including cleaning communal bathrooms. *See*, *e.g.*, *Jackson*, 2013 WL 3810301, at *10. In light of that precedent, Haugen would not have had clear and fair warning that her alleged conduct was unconstitutional. That is particularly true in this case, as Mendez has unsuccessfully asserted similar Thirteenth Amendment claims against Haugen in the past. *See Mendez v. Rosenbuam*, No. 11-1483, 2011 WL 3438865, at *1–2 (D. Minn. June 30, 2011) (rejecting Mendez's claim that Haugen violated the Thirteenth Amendment by threatening to discipline him if he did not perform his work assignment), *report and recommendation adopted*, 2011 WL 3438493 (D. Minn. Aug. 5, 2011); *Mendez v. Anderson*, No. 06-3307, at *3, 12–18 (D. Minn. Aug. 14, 2007) (concluding that forcing Mendez to work in the Food Service Department did not violate the Thirteenth Amendment), *report and recommendation adopted*, No. 06-3307 (D. Minn. Sept. 14, 2007).

Because Haugen is entitled to qualified immunity on Mendez's Thirteenth Amendment claim, this Court recommends that her motion to dismiss be granted. And

since the remaining defendants are all unnamed and the Thirteenth Amendment claims against them are equally infirm, this Court further recommends that this action be dismissed in its entirety.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Mary Haugen's motion to dismiss under Fed. R. Civ. P. 12(b)(6) based on qualified immunity (Doc. No. 15) be **GRANTED**;

2. Plaintiff Raphael Mendez's claims against Haugen be **DISMISSED WITH PREJUDICE**; and

3. This action be **DISMISSED** in its entirety.

Date: August 18, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report by **September 4, 2015**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).